IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CYNTHIA L. JOHNESE, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:06-CV-0533-D |
| VS. | § |
| | § |
| JANI-KING, INC., et al., | § |
| | § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

Defendants' motion to dismiss and for other sanctions presents the question whether plaintiff engaged in sufficiently egregious conduct by surreptitiously coaching a witness during a telephonic deposition to warrant dismissing this case with prejudice. Concluding that plaintiff's conduct warrants this extreme sanction, the court grants the motion and dismisses this case with prejudice.

I

The underlying factual and legal basis for the lawsuit need not be recounted at length. In short, plaintiff Cynthia Johnese ("Johnese") sues defendants Jani-King, Inc., and Jani-King International, Inc. for wrongful denial of employment, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001-21.556 (Vernon 2006). She maintains that, despite being more qualified than the person hired, she was denied a position because of her race, sex, and age.

To prove her qualifications, Johnese testified at a deposition that she and her husband were co-owners of a small janitorial services company for over 29 years, and that the two of them had equally shared all duties associated with the business. There was some reason to be skeptical of this testimony, however, because Johnese had been a full time employee for much of the same period, working in jobs unrelated to the janitorial business. To evaluate Johnese's level of experience, defendants deposed her husband and purported business partner, Wilbert Johnese, Jr. ("Wilbert"). Wilbert was the only other person associated with the janitorial business and the only witness who could confirm or deny Johnese's testimony.

Wilbert was deposed by telephone at the office of Janet Parker & Associates ("JP&A"), a court reporting agency in Baton Rouge, Louisiana. The only people in the room with him at any time during the deposition were his wife, the court reporter who transcribed the deposition, Bunnie Ryan ("Ryan"), and the JP&A office manager, Jenny Forest ("Forest"), who entered the room twice to deliver exhibits and coffee. Counsel for each side participated by telephone. Early in the deposition, defense counsel heard Johnese whisper an answer to Wilbert, which he in turn repeated in response to a question. When defense counsel instructed Johnese to remain silent and not to interfere with her husband's answers, she apologized, explaining that her response had been "just a reflex."

Ds. App. 3-4. The deposition continued until, near its conclusion, defense counsel heard someone writing fervently on a piece of paper. He asked Wilbert whether his wife had been writing answers for him during the deposition, and Wilbert said she had not. *Id.* at 5.

The next day, defense counsel received a letter from Ryan stating that Johnese had in fact been passing notes to her husband. *Id.* at 11. Forest also observed this behavior. *See id.* at 12. Both have submitted affidavits describing what they saw. *See id.* at 8-10 (Ryan Affidavit); *id.* at 12-13 (Forest Affidavit). According to their statements, Johnese began the deposition seated at the opposite end of the table from her husband, but soon repositioned herself so that she was standing over him as he answered questions. *Id.* at 8 and 12. Throughout the deposition, she wrote answers to the questions of defense counsel on pieces of paper and passed them to Wilbert. *Id.* at 8-9 and 13. At one point, Forest observed that Johnese had written "yes" on a piece of paper and passed it to Wilbert, who then responded "yes" to the question asked. *Id.* at 13. Answers were relayed in this manner to over 90% of the questions asked. *Id.* at 8-9. By the conclusion of the deposition, Johnese had filled the front and back of six sheets of paper. *Id.* at 13.

After learning of Johnese's conduct, defendants filed the instant motion to dismiss, charging Johnese with fraud on the

court. The day after defendants filed the motion, Johnese's counsel moved for leave to withdraw. Johnese opposed the motion, but she has not responded to defendants' motion to dismiss or contested the factual allegations on which it is based.

II

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). The exercise of these inherent powers is within the court's discretion, although they must be exercised with restraint. *Id.* at 44. A court should not dismiss a case without considering whether lesser sanctions would adequately redress the litigant's misconduct. *Shepherd v. Am. Broadcasting Cos.*, 62 F.3d 1469, 1479 (D.C. Cir. 1995) (collecting cases).

A "primary aspect of [the court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers,* 501 U.S. at 45. "[T]ampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* at 44. Accordingly, although "outright dismissal of a lawsuit . . .

is a particularly severe sanction, [it] is within the court's discretion." *Id.* at 45; *see also, e.g., Pope v. Fed. Express Corp.,* 974 F.2d 982, 984 (8th Cir. 1992) (affirming dismissal where plaintiff had introduced falsified document in support of claim). It is especially appropriate "where a party manufactures evidence which purports to corroborate its substantive claims." *Vargas v. Peltz*, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995) (dismissing suit where plaintiff in sexual harassment lawsuit fabricated evidence) (citing *Pope,* 974 F.2d at 984; *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (dismissing case where plaintiff had attached fabricated document to complaint); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir. 1991) (dismissing action where plaintiff lied about whether he was using defendant's product at time of alleged accident).

> It is difficult to contemplate a clearer or more abhorrent example of a litigant's attempt to abuse and subvert the integrity of the judicial process than an effort to suborn perjury from a material witness. Coercing or seeking to obtain or manufacture false testimony [ ]strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding . . . . Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts.

*Lee v. Sass,* 2006 WL 799176, at *1 (E.D. Mich. Mar. 29, 2006) (internal quotation marks omitted) (quoting *Young v. Office of the U.S. Senate Sergeant At Arms*, 217 F.R.D. 61, 71 (D.D.C. 2003)). Thus when dismissing a case for fraudulent litigation conduct, the

- 5 -

court does so not only as a remedy for harm incurred by other parties, but also as a deterrent to future litigants who might consider engaging in similar conduct. *See, e.g., Jimenez v. Madison Area Tech. Coll.,* 321 F.3d 652, 657 (7th Cir. 2003) (citing deterrence rationale for affirming dismissal in Fed. R. Civ. P. 11 context); *Aoude,* 892 F.2d at 1118 (holding that courts should consider the "deterr[ence of] future misconduct" when determining appropriate sanction).

III

Although specifically instructed *not* to provide answers to her husband, Johnese deliberately defied this clear directive and suborned perjury, apparently believing she could escape detection (she would have in fact escaped detection had Ryan and Forest not acted to preserve the integrity of the administration of justice and come forward with what they had observed). As the court will explain, this blatant fraud on the court warrants dismissal of this case.

The court recognizes that a more graduated approach to sanctions is encouraged in most circumstances. *See, e.g., Shepherd,* 62 F.3d at 1478 ("[D]ismissal is a drastic step, normally to be taken only after unfruitful resort to lesser sanctions." (internal quotation marks omitted)). But for reasons cogently explained by other courts, fraud on the court uniquely calls for dismissal after its very first occurrence:

> Dismissal of a lawsuit, to be sure, is among the harshest of sanctions. However, the severity of the misdeed . . . compels such harshness. . . . Permitting [a] lawsuit to proceed [despite proven fraud on the court] would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Vargas,* 901 F. Supp. at 1582 (internal quotation marks omitted) (quoting *Pope v. Fed. Express Corp.,* 138 F.R.D. 675, 683 (W.D. Mo. 1990), *aff'd in part, vacated in part on other grounds,* 974 F.2d 982 (8th Cir. 1992)). Moreover, "the imposition of monetary sanctions alone would suggest that money could cure litigation misconduct even of the magnitude found here, including witness tampering and suborning perjury." *Young*, 217 F.R.D. at 70. Such sanctions are especially ineffective where a plaintiff, such as the plaintiff in this case, has limited financial means. *Derzack v. County of Allegheny, Pa.,* 173 F.R.D. 400, 416 (W.D. Pa. 1996), *aff'd*, 118 F.3d 1575 (3d Cir. 1997) ("Plaintiffs' inability or unwillingness to pay a monetary sanction clearly renders it ineffectual."). Accordingly, the court concludes that the only effective sanction for Johnese's conduct is dismissal with prejudice. Although severe, this sanction is necessary to preserve the integrity of the judicial process.[*]

---

[*]Although *Shepherd* reversed a district court's decision to enter a default judgment against a defendant who committed fraud on

\* \* \*

Defendants' January 14, 2008 motion to dismiss and for other sanctions is granted, and this case is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

March 3, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

the court, *see Shepherd,* 62 F.3d at 1480, *Shepherd* is distinguishable. The D.C. Circuit based its decision on two grounds. First, it found that the alleged misconduct had only been determined by a preponderance of the evidence rather than by the clear and convincing evidence standard required in that circuit. *Id.* Second, the district court had failed to give a reasonable explanation for rejecting lesser sanctions. *Id.* In the present case, by contrast, there is clear and convincing evidence of Johnese's misconduct (assuming that such a standard controls), and the court has amply explained why lesser sanctions are insufficient.

*Shepherd* also contains language suggesting that dismissal—even for fraud on the court—should be reserved for cases where the fraud involves an important issue in the case. *See id.* ("[T]he alleged alteration [of a single company document out of many] did not go to the heart of plaintiffs' case."). Assuming *arguendo* that such a principle should apply in this circuit, Wilbert is a key witness regarding a central issue in the case—namely, whether Johnese is more qualified than the person hired.

- 8 -